MINER, Circuit Judge:
 

 Plaintiff-appellant Sanyo Electric, Inc. (“Sanyo”) appeals from the portion of a judgment of the United States District Court for the Eastern District of New York (Wexler, J.) that reversed an order of the United States Bankruptcy Court for the Eastern District of New York (Holland, J.). Sanyo had entered ihto a security agreement with defendant-appellee Howard’s Appliance Corp. (“Howard”), under the terms of which Howard gave Sanyo a security interest in all Sanyo air conditioners (“collateral”) possessed or thereafter acquired by Howard. As the agreement required Howard to keep the air conditioners at its store in Nassau County, New York, Sanyo perfected its security interest in New York only. Howard later began to store the air conditioners at a warehouse in New Jersey without informing Sanyo. Approximately six months after it began to warehouse the air conditioners in New Jersey, Howard filed a voluntary Chapter 11 petition with the Bankruptcy Court in the Eastern District of New York; Howard continued thereafter in business as a debt- or-in-possession,
 
 see
 
 11 U.S.C. § 1107 (1982 & Supp. Ill 1985).
 

 Although it never filed any financing statements in New Jersey, Sanyo moved for relief from the automatic stay imposed by 11 U.S.C. § 362 (1982 & Supp. Ill 1985) to enable it to proceed against Howard’s inventory. Invoking the doctrine of equitable estoppel, the bankruptcy court determined,
 
 inter alia,
 
 that Sanyo possessed the rights of a holder of a validly perfected security interest in the air conditioners stored in New Jersey, and that Sanyo was entitled to an order vacating the automatic stay or to adequate protection of its interest.
 
 See
 
 69 B.R. 1015 (Bankr.E.D.N.Y. 1987). The district court reversed this part of the bankruptcy court’s order, holding that equitable estoppel was ineffective
 
 *90
 
 against Howard’s “strong-arm” powers under 11 U.S.C. § 544 (1982 & Supp. Ill 1985) as a debtor-in-possession.
 
 See
 
 91 B.R. 204 (E.D.N.Y.1988). Because we look to 11 U.S.C. § 541 (1982 & Supp. Ill 1985) to impress a constructive trust in Sanyo’s favor, we reverse the judgment of the district court and hold that Sanyo’s interest in the collateral is superior to that of Howard.
 

 BACKGROUND
 

 Howard, a retailer of home appliances, began purchasing appliances from Sanyo in March 1984. The parties entered into a security agreement on March 12 of that year, giving Sanyo a security interest in all of the goods possessed or acquired by Howard that were manufactured or sold by, or acquired from, Sanyo. Sanyo was given also an interest in the proceeds from the sale of those goods. The agreement provided that “[t]he collateral will be kept at the debtor’s place of business located at the address as shown at the beginning of this agreement; and that there are no other places of business of debtor.” At that time, Howard operated only one store, located in Nassau County, New York, the address shown on the agreement. In order to perfect its security interest, Sanyo filed a UCC-1 Financing Statement with the Clerk of Nassau County and the Secretary of State of New York on March 30, 1984.
 

 Howard opened a second store, in April 1984, and a third store, in November 1985, both in Suffolk County, New York. Howard then sold its Nassau County store in March 1986, and began operating exclusively in Suffolk County. The Nassau County store, however, continued to operate under the Howard logo; in fact, Howard continued to advertise the store, holding it out to the public as one of its own retail locations. Although Howard never sent Sanyo written notice of the sale, Joel Stern, an independent sales representative who sold Sa-nyo merchandise to Howard on a commission basis, “informally learned,” e-'ther in March or April 1986, that the store had been sold; he apparently communicated this knowledge to Sanyo’s credit department. Sanyo, however, never filed a financing statement with the Clerk of Suffolk County.
 

 From 1981 to 1986, Howard stored all of its inventory at either its Nassau County store or at one of its retail locations in Suffolk County. Early in 1986, however, Howard began renting space in a public warehouse located in New Jersey (the “Do-nadío warehouse”) to store its inventory. In addition, Howard had manufacturers deliver goods directly to the Donadío warehouse. Howard would not sell the products out of the warehouse; instead, it would have items re-shipped from New Jersey to its New York locations on an “as needed” basis. Significantly, Howard never told Sanyo, either orally or in writing, that goods were being stored in New Jersey; nor did Sanyo file any financing statements in that state.
 

 Sanyo’s traffic department learned of the New Jersey location in February 1986, when it shipped, via common carrier, a large supply of air conditioners from its New Jersey factory to the Donadío warehouse. Apparently, the common carrier notified Theresa O’Brien, Sanyo’s traffic manager, that Howard had instructed it to deliver the goods to New Jersey. Because it was normal procedure for a customer to change the location to which goods are shipped, O’Brien customarily would change the bill of lading to reflect the new destination, but never reported such changes to any other department at Sanyo, including the credit department. O’Brien followed the customary practice here.
 

 Howard filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1174 (1982 & Supp. Ill 1985), on August 6,1986. As a result, an automatic stay attached under 11 U.S.C. § 362, which prevented Sanyo from perfecting its security interest in the air conditioners located in New Jersey. By order to show cause dated August 14,1986, Sanyo moved to lift the stay so that it could foreclose on certain of Howard’s inventory, including property stored in Suffolk County and New Jersey, in which it claimed a security interest. Since the date of the filing, Howard has continued to run its
 
 *91
 
 business as a debtor-in-possession under 11 U.S.C. § 1107.
 

 At a hearing held on September 2, 1986 before the bankruptcy court, Michael Howard, the president of Howard, testified that the decision to warehouse in New Jersey was dictated by a shortage of space at his New York locations, and that storage in New Jersey was “advantageous” financially. He testified also that he never sent Sanyo formal written notice that Howard was storing Sanyo’s goods in New Jersey and never gave Sanyo such notice by telephone. He testified, however, that he advised independent sales representative Joel Stern, perhaps as early as February 1986, that Howard “probably would be warehousing in New Jersey,” and that Stern was advised that the goods actually were going to New Jersey “when the merchandise was ... shipped at a later date, two or three months later.” Stern testified that he first became aware that Howard was storing Sanyo inventory in the New Jersey warehouse on approximately August 8, 1986, two days after the filing of the Chapter 11 petition. Ed Toomey, the National Home Credit Manager for Sanyo, testified that Howard never notified Sanyo’s credit department. He testified further that he never was informed by Sanyo’s traffic department that the goods had been shipped to the Donadio warehouse, and that he first learned of the New Jersey warehouse “two days after the filing of the [Chapter 11] petition when we sent our representatives to take an inventory.”
 
 [1]
 

 The bankruptcy court issued its decision on February 26, 1987, concluding that “Sa-nyo has a validly perfected interest in the goods it supplied to” Howard that were stored both at Howard’s retail locations in Suffolk County and at the Donadio warehouse in New Jersey. 69 B.R. at 1024. As to the Suffolk County merchandise, the court looked to U.C.C. § 9-401(3)
 
 [2]
 
 and determined that the financing statements filed with the Clerk of Nassau County and the Secretary of State survived the “consolidation” of Howard’s operations in Suffolk County.
 
 Id.
 
 at 1019.
 

 Regarding the merchandise stored at the Donadio warehouse, the court noted that, although Sanyo should have filed a financing statement in New Jersey to perfect its security interest in the collateral,
 
 see
 
 12A N.J. Stat-Ann. §§ 9-302, 9-401(l)(c) (West Supp.1986),
 
 [3]
 
 principles of equity had to be considered to determine whether Sanyo has a perfected interest despite its failure to file,
 
 see id.
 
 § 1-103. The court invoked the doctrine of equitable estoppel and, crediting the testimony of Stern and Toomey, found that: Howard “concealed the fact that it was storing the subject inventory in the Donadio warehouse in New Jersey,” 69 B.R. at 1022-23; “no highly placed official from Sanyo was ever directly told by” Howard of this fact,
 
 id.
 
 at 1023; Howard “expected that its concealment ... would be relied upon by Sanyo in such a way as to dissuade [Sanyo] from filing a financing statement in New Jersey,”
 
 id.;
 
 by concealing this information from Sanyo, Howard in fact “prevented Sanyo from protecting its security interest by filing in New Jersey,”
 
 id.;
 
 and because “Sanyo did not become aware that its inventory was being stored in New Jersey until the time in which Howard [] filed its Chapter 11 peti
 
 *92
 
 tion, it had no opportunity to perfect its security interest,”
 
 id.
 
 Accordingly, the court concluded that Howard was “estopped from denying the New Jersey perfection of Sanyo’s security interest,”
 
 id.,
 
 and scheduled a hearing to determine whether Sanyo’s interest was adequately protected and, if not, whether the section 362 stay should be vacated.
 

 The district court, in a memorandum and order dated September 23, 1988, affirmed the bankruptcy court’s determination regarding Sanyo’s security interest in the merchandise stored in Suffolk County, but only as to the merchandise shipped to the Suffolk County locations while Howard also operated its store in Nassau County. Insofar as goods may have been shipped to Suffolk County after the closing of Howard’s Nassau County store, the court held that, pursuant to U.C.C. § 9-401(l)(c), Sa-nyo was required to file a financing statement with the Clerk of Suffolk County to perfect its interest.
 
 See In re Knapp,
 
 575 F.2d 341, 344 (2d Cir.1978) (proper place for filing determined at time security interest attaches to collateral);
 
 Marine Midland Bank-Eastern Nat’l Ass’n v. Conerty Pontiac-Buick, Inc.,
 
 77 Misc.2d 311, 317, 352 N.Y.S.2d 953, 961 (Sup.Ct.1974) (security interest attaches when debtor acquires collateral). Concluding that “Sanyo’s sales and credit departments had actual knowledge that the Nassau County location had been sold,” 91 B.R. at 206, the court rejected Sanyo’s estoppel argument and remanded the matter to the bankruptcy court for a determination of which goods were shipped to Suffolk County prior to the sale of the Nassau County store.
 

 Finally, the district court held that, as to the property in Suffolk County acquired after the sale and as to all Sanyo’s merchandise stored in New Jersey, the application of equitable estoppel would contravene the “strong-arm” powers of Howard, in its capacity as a debtor-in-possession.
 
 [4]
 
 Because a debtor-in-possession generally has the same rights, powers and duties as a trustee,
 
 see
 
 11 U.S.C. § 1107(a);
 
 In re Vintero Corp.,
 
 735 F.2d 740, 741 (2d Cir.),
 
 cert. denied,
 
 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984), and because a trustee may avoid a lien under section 544(a) even where he possesses actual notice of the lien’s existence, the court concluded that “Howard[] has the power, just as would a trustee, to avoid Sanyo’s unper-fected lien,” 91 B.R. at 207. The court quoted
 
 In re Brent Explorations, Inc.,
 
 31 B.R. 745, 749 (Bankr.D.Colo.1983), as authority for the proposition that one of the purposes of providing the debtor-in-possession with the status of an ideal creditor was “to prevent such defenses as estoppel from being raised.” The court observed that this determination rests firmly with the “conscious decision by Congress to favor the trustee over unperfected creditors, regardless of the particular equities of the case.” 91 B.R. at 208. Sanyo, the court continued, could have protected its interest by taking “precautionary measures” to ensure that the property in fact was delivered to Howard’s locations in New York, where Sanyo filed its security interest.
 
 Id.
 
 The court thus concluded that “[t]he doctrine of estoppel cannot prevent Howard[] from avoiding Sanyo’s interest under section 544(a).”
 
 Id.
 

 After judgment was entered and Sanyo filed its notice of appeal, the parties, in an effort to resolve the issue remanded to the bankruptcy court, entered a stipulation providing that no merchandise was shipped to Howard in Suffolk County after the sale of the Nassau County store. Consequently, the only issue remaining for this Court to
 
 *93
 
 address is the extent of Sanyo’s interest in the air conditioners located in New Jersey.
 

 DISCUSSION
 

 Under section 541 of the Bankruptcy Code, a debtor’s legal and equitable interests in property, “as of the commencement of the case,” constitute “[p]roperty of the estate,” 11 U.S.C. § 541(a)(1). Property in which the debtor holds only legal title and not an equitable interest, however, becomes property of the estate “only to the extent of a debtor’s legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold,”
 
 id.
 
 § 541(d). That is, the bankruptcy estate does not include “property of others in which the debtor ha[s] some minor interest such as a lien or bare legal title,”
 
 United States v. Whiting Pools, Inc.,
 
 462 U.S. 198, 204 n. 8, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515 (1983);
 
 see 4 Collier on Bankruptcy
 
 11 541.13, at 541-75 (15th ed.1989) (estate succeeds only to the title and rights that the debtor possessed);
 
 In re Quality Holstein Leasing,
 
 752 F.2d 1009, 1012 (5th Cir.1985) (same).
 

 Where the debtor’s “conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions,”
 
 In re Flight Transp. Corp. Securities Litigation,
 
 730 F.2d 1128, 1136 (8th Cir.1984);
 
 see Georgia Pacific Corp. v. Sigma Service Corp.,
 
 712 F.2d 962, 968 (5th Cir.1983). Indeed, the Supreme Court has declared that, while the outer boundaries of the bankruptcy estate may be uncertain, “Congress plainly excluded property of others held by the debt- or in trust at the time of the filing of the petition,”
 
 Whiting Pools,
 
 462 U.S. at 205 n. 10;
 
 see
 
 S.Rep. No. 989, 95th Cong., 2d Sess. 82
 
 and
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 368,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5868, 6323-24;
 
 see also In re Kennedy & Cohen, Inc.,
 
 612 F.2d 963, 965 (5th Cir.) (under previous bankruptcy statute, property held by debt- or in constructive trust “belongs to the beneficiary and never becomes a part of the bankruptcy estate”),
 
 cert. denied,
 
 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980).
 
 [5]
 
 A constructive trust, therefore, '“confers on the true owner of the property an equitable interest in the property superi- or to the trustee’s,”
 
 Quality Holstein Leasing,
 
 752 F.2d at 1012;
 
 cf. In re General Coffee Corp.,
 
 828 F.2d 699, 706 (11th Cir.1987) (constructive trust beneficiary has priority to trust assets over a judicial lienholder or execution creditor),
 
 cert. denied,
 
 — U.S. —, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988). The reason for this priority is clear: but for the debtor’s misconduct, the trust beneficiary would have perfected his security interest in the res of the trust and thus would have prevailed over the debtor as well as the debtor-in-possession.
 

 The existence and nature of a debt- or’s interest, and correspondingly the estate’s interest, in property is determined by state law.
 
 In re FCX, Inc.,
 
 853 F.2d 1149, 1153 (4th Cir.1988),
 
 cert. denied,
 
 — U.S. —, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989);
 
 In re N.S. Garrott & Sons,
 
 772 F.2d 462, 466 (8th Cir.1985); 4
 
 Collier on Bankruptcy
 
 11 541.02[1], at 541-10 to -13. One must look to state law, therefore, to determine whether to impose a constructive trust on property within the debtor’s possession. Nee,
 
 e.g., In re N.S. Garrott & Sons,
 
 772 F.2d at 467;
 
 Quality Holstein Leasing,
 
 752 F.2d at 1012. As a general rule,
 
 *94
 
 the law of the situs of the property, and therefore the trust, governs this determination.
 
 See, e.g., In re O.P.M. Leasing Services, Inc.,
 
 40 B.R. 380, 398-99 (Bankr.S.D.N.Y.), aff
 
 'd,
 
 44 B.R. 1023 (S.D.N.Y.1984);
 
 cf. Collier on Bankr.
 
 ¶ 544.02, at 544-13 to -14 (under section 544, “the tendency of the courts is to treat the law of the situs of property at the commencement of the case as governing”);
 
 In re Dennis Mitchell Indus., Inc.,
 
 419 F.2d 349, 352, 353 n. 10 (3d Cir.1969) (same). Here, there is no dispute that, as the bankruptcy court observed, the property at issue always has been located in New Jersey — the air conditioners were delivered from Sanyo’s New Jersey factory to the Donadío warehouse, also in New Jersey, where they have remained as of the commencement of this action. Hence, the law of New Jersey applies.
 

 Under New Jersey law, “a constructive trust should ‘be impressed in any case where to fail to do so will result in an unjust enrichment.’ ”
 
 Stewart v. Harris Structural Steel Co.,
 
 198 N.J.Super. 255, 486 A.2d 1265, 1271 (Super.Ct., App.Div. 1984) (quoting
 
 D’Ippolito v. Castoro,
 
 51 N.J. 584, 588, 242 A.2d 617, 619, 38 A.L.R. 3d 672, 677 (1968)). When property has been acquired or retained “in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee,”
 
 id.,
 
 486 A.2d at 1271 (quoting
 
 Beatty v. Guggenheim Exploration Co.,
 
 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919));
 
 see Hill v. Warner, Berman & Spitz, P.A.,
 
 197 N.J.Super. 152, 484 A.2d 344, 352 (Super.Ct., App.Div.1984). The Supreme Court of New Jersey has stated that, in general, “all that is required to impose a constructive trust is a finding that there was some wrongful act, usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property.”
 
 D’Ippolito,
 
 242 A.2d at 619, 38 A.L.R.3d at 677. In fact, such a trust may arise “even though the acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it.”
 
 Id.
 
 (quoting
 
 Scott on Trusts
 
 § 462.2, at 3417 (3d ed. 1967));
 
 accord Stretch v. Watson,
 
 5 N.J. 268, 74 A.2d 597, 602 (1950);
 
 Stewart,
 
 486 A.2d at 1271-72.
 

 In light of the foregoing, we hold that a constructive trust should be imposed in favor of Sanyo. The bankruptcy court’s factual findings, which were neither challenged by Howard nor disputed by the district court, call for no less.
 
 See Wien Air Alaska, Inc. v. Bachner,
 
 865 F.2d 1106, 1108 (9th Cir.1989) (court of appeals reviews bankruptcy court’s findings of fact under clearly erroneous standard);
 
 Forsdick v. Turgeon,
 
 812 F.2d 801, 802 (2d Cir.1987) (same);
 
 see also
 
 11 U.S.C. Rule 8013 (Supp. V 1987) (findings of fact “shall not be set aside unless clearly erroneous”). It is noteworthy that until approximately six months prior to the filing of its Chapter 11 petition, Howard had always stored its inventory at its Nassau County location, as required by the security agreement, and its Suffolk County stores. While Howard’s contentions that the decision to warehouse in New Jersey was “borne of necessity” and “not out of sinister motives” do not fall upon deaf ears, we agree with the bankruptcy court that Howard, in light of its conduct, “acted with the expectation that Sanyo would not perfect its security interest in this inventory by filing a financing statement in New Jersey,” 69 B.R. at 1023. Certainly, Howard must have known that, under the terms of the security agreement, it was obligated to keep its Sanyo merchandise at its Nassau County location, and that by storing its inventory in New Jersey, it would frustrate Sanyo’s interest in those goods.
 

 We find it significant, too, that Howard never informed Sanyo of the Donadío warehouse, and that Sanyo only learned of the warehouse, through third parties,
 
 after
 
 the filing of the petition, when it was too late to file a financing statement in New Jersey. The direction to Sanyo’s traffic department to ship the merchandise to New Jersey was not sufficient to place Sanyo on notice that its goods were being stored in New Jersey. The record establishes that it is common practice for buyers to change
 
 *95
 
 shipping destinations and that, as a result of this practice, the traffic department routinely approves such changes, as it did here, without notifying its “principals.” Undoubtedly, Howard was aware of this practice.
 
 See Corporacion de Mercadeo Agricola v. Mellon Bank Int’l,
 
 608 F.2d 43, 46 (2d Cir.1979) (“Notice to the agent ... is notice to the principal, unless the person giving notice has reason to know that the agent has no duty to or will not transmit the message to the principal.”).
 

 Our decision in
 
 Vintero,
 
 735 F.2d 740, does not conflict with this conclusion. In
 
 Vintero,
 
 we were confronted with a creditor, Corporación Venezolana de Fomento (“CVF”), that inadvertently had allowed its perfected security interest in a ship to lapse. Significantly, the debtor, Vintero Corporation (“Vintero”), had not engaged in any misconduct that caused CVF to refrain from filing a financing statement. Nevertheless, we held that “although Vintero, as a debtor-in-possession, could exercise the rights of a lien creditor, it obviously was not one.”
 
 Id.
 
 at 742. Thus, we stated that “[t]o the extent that other creditors of Vintero are not affected adversely by enforcement of CVF’s security interest, there is no reason why such interest should not be enforced.”
 
 Id.
 
 Here, however, Sa-nyo’s failure to file is directly attributable to Howard’s misconduct. Had Howard informed Sanyo that it was storing merchandise in New Jersey, Sanyo would have had the opportunity to perfect its interest there. Under these circumstances, we are authorized by the law of New Jersey to impress a constructive trust; as the beneficiary of the trust, Sanyo now enjoys a position superior to that of any lien creditor and to any of Howard’s other creditors as well.
 

 Finally, we need not concern ourselves with whether section 544 of the Bankruptcy Code would mandate a result contrary to the one we reach today,
 
 see General Coffee,
 
 828 F.2d at 704-07, since the constructive trust imposed here attached prior to the filing of the Chapter 11 petition.
 
 See Quality Holstein Leasing,
 
 752 F.2d at 1013-14 & n. 10 (property rights that attached before the petition date supercede the debtor-in-possession’s lien creditor position under section 544). Indeed, the court in
 
 General Coffee,
 
 828 F.2d at 706, in considering the interplay between sections 541 and 544, recognized that the rights of a beneficiary of a constructive trust “prevail over a hypothetical ideal lienholder.”
 
 Accord In re Storage Technology Corp.,
 
 55 B.R. 479, 484 (Bankr.D.Colo.1985).
 

 Accordingly, we hold that, by virtue of a constructive trust imposed pursuant to New Jersey law, Sanyo’s interest in the collateral stored by Howard in New Jersey is superior to Howard’s interest in that property. -
 

 CONCLUSION
 

 The portion of the district court’s judgment from which Sanyo appeals is reversed.
 

 [1]
 

 . The parties stipulated in the bankruptcy court that, as of the end of 1985, the amount of debt owed by Howard to Sanyo was $419,825.64, and that, as of the date of filing, the total amount was $879,986.83. The parties stipulated further that “no inventory has been transferred from New York to New Jersey since the date of the filing."
 

 [2]
 

 . Section 9-401(3) of the Uniform Commercial Code, as adopted by New York, provides:
 

 A filing which is made in the proper place in this state continues effective even though the debtor’s residence or place of business or the location of the collateral or its use, whichever controlled the original filing, is thereafter changed.
 

 N.Y.U.C.C. Law § 9-401(3) (McKinney Supp. 1989).
 

 [3]
 

 .The bankruptcy court determined that, al- , though Howard has its principal place of business in New York, the law of New Jersey governs the issue of perfection because the collateral is and always has been located in New Jersey. 69 B.R. at 1019-20.
 
 See
 
 12A N.J.Stat. Ann. § 9-103(l)(b) (West Supp.1986); N.Y. U.C.C. Law § 9-103(l)(b) (McKinney Supp.1989);
 
 see also
 
 J. White & R. Summers,
 
 Uniform Commercial Code
 
 § 23-18, at 966-67 (2d ed. 1980).
 

 [4]
 

 . Section 544 of Title 11 U.S.C. provides in pertinent part:
 

 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 

 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists....
 

 11 U.S.C. § 544(a)(1).
 

 [5]
 

 . Although the Ninth Circuit has chosen not to accept "the proposition that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust,”
 
 In re Lewis W. Shurtleff, Inc.,
 
 778 F.2d 1416, 1419 (9th Cir.1985) (quoting
 
 In re North American Coin & Currency, Ltd.,
 
 767 F.2d 1573, 1575 (9th Cir.1985),
 
 cert. denied,
 
 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986)), its approach is not widely accepted,
 
 see, e.g., In re N.S. Garrott & Sons,
 
 772 F.2d 462 (8th Cir.1985):
 
 Quality Holstein Leasing,
 
 752 F.2d 1009 (5th Cir.1985);
 
 see also In re General Coffee Corp.,
 
 828 F.2d 699 (11th Cir.1987). In fact, the Ninth Circuit’s view tends to conflict with the Supreme Court’s instruction in
 
 Whiting Pooh,
 
 462 U.S. at 205 n. 10, 103 S.Ct. at 2314 n. 10, that the bankruptcy estate "plainly” does not include "property of others held by the debtor in trust at the time of the filing of the petition.”